It's a really interesting Fair Labor Standards Act, U.S. Attorney's Office. I hope nobody was trying to find a U.S. attorney in there at the time. You barely allude to what is absolutely essential here to meet the requirement of quote-unquote learned professions, specialized intellectual instruction, specialized academic training, customarily acquired by a prolonged course of specialized intellectual instruction and study, knowledge in a field of science or learning. And then it says, this serves to distinguish the professions from the mechanical arts where in some instances the knowledge is of a fairly advanced type, helicopter pilots, but not in a field of science or learning. That is what the reg requires. Understood, Judge Barry. And I would commend the Court's attention to the case that I cited in my brief, which is the Paul case. And in the Paul case, it appears that the Fifth Circuit has interpreted the regulations which were revised in 2004 to not only include intellectual study, but also work experience. It also appears from meeting the Paul case that the Court acknowledges that while a I would submit to this Court, again, by looking at the testimony of the plaintiff's appellees in this case, that it is clear that they engage in intellectual pursuits and that they have an advanced knowledge of science and are learning professionals. Well, there was a stinging dissent in Paul. Paul is a very old case, 1983. A stinging dissent which says there is absolutely no record in this case, no idea how most commercial instrument-rated pilots acquire their training, nor do we know how Paul acquired his. And the only way the majority in that case had to come to its conclusion was to take judicial notice, not of the education, which is what the reg requires, but of the training that is generally available. So pilots. And not only that, they did not decide whether company pilots as a class performed the exempt professional work. They say instead we face here only a pilot like Paul with the highest flight rating, considerable training, and job experience. It's as if they took him, they kind of plucked him out from the rest of the group and said he has had this specialized training. I don't know. Well, significantly, Your Honors, the plaintiff appellees in this case have the same credentials as the plaintiff in the Paul case. The plaintiffs in this case have FAA credentials. They have transport pilot licenses. I think what we're suggesting is that the plaintiff in Paul did not have what is I think that when you look at the testimony of these particular plaintiffs in this case, that you find that they have extensive hours of flying. Is that really what we need? Tell us what they have that fits the language that both Judge Barry and I are focusing on, and that is the course of specialized intellectual instruction. I would submit to this Court that the course of specialized instruction came with Mr. Chase when after he completed his seven years of military service, that he enrolled in a flight school in Florida, which he mentions in his deposition. Mr. Chase also. And how long is that flight school? I do not know, Your Honor, as I stand here, but I believe that it is reflected in the record. Mr. Pignatero also indicates in his deposition that he pursued commercial jobs and additional flight time so that he could qualify to meet the minimum standards that were required by the Port Authority in order for him to be hired on as a helicopter pilot for the Port Authority. That requirement indicated to potential candidates that they needed to have flying time other than simply military time, and it appears that both gentlemen did go out and pursue that through obtaining other positions. I just want to go back to what you raised about the intellectual pursuits and the testimony that both men gave that I think bears on that issue with regard to whether or not they have knowledge of an advanced type in a field of science and learning. And I think that it is clear that, and it appears that it's primarily based upon their military experience, which I believe is the functional equivalent, and I would submit to this Court as the functional equivalent of a degree, that they were able to perform functions which were scientific in nature, such as calculating the weight of the aircraft vis-à-vis the fuel levels. They indicated that they had to confer with air traffic control towers in the surrounding area. They also indicated that there may have been times when they would have to look at the navigational systems, when they would have to prepare flight plans that would have to be disseminated to air traffic control systems. Can I ask you to switch gears for just a minute? Referred to in the briefs are, of course, the Fair Labor Standards Act says that the Department of Labor has to implement regulations, which we know that they did. Correct. As far as I can tell in the briefs, there are three agency pronouncements. One would be that wage and hour division letter, which apparently now says, as of this year, that pilots are not exempt as learned professionals. We've got that administrative review board that basically says Paul is wrong, and we think that the regs say that pilots are not exempt as learned professionals. And there's a preamble to the CFR that says the same thing. What kind of deference are those pronouncements? What kind of deference should we give those pronouncements? I believe, Your Honor, that the administrative review board decision was overturned by the Kitty Hall. It was, but they're speaking about their own regulations. So do we owe some sort of deference to what they say about their own regulations? It appears that overall that the wage and hour division of the Department of Labor has basically said that they were taking a no enforcement position with regard to pilots. Well, they said they won't take, yeah, with regard to challenged cases, but they've said pretty, I think, fairly clearly as to what their position is as to what the regulations provide with respect to pilots, right? Well, with respect to commercial pilots, I think that it's clear that they are exempt. But with respect to pilots such as helicopter pilots and pilots of, I think they call it rotocraft, it is a little bit more murky. And it appears that it is at odds with the holding in Paul and some of the other cases that were cited in my brief that have come along since the holding in Paul. They say they disagree with Paul. All right. We've gone over into a minute of time, but we'll allow you on your rebuttal. Thank you. All right. Thank you. Good afternoon, Your Honors. My name is Christine Carey-Levore. I represent Michael Pignataro and Thompson Chase. I call myself an appellee cross-appellant, and what I would like to do since I did not reserve time, it's a very limited issue on the cross-appeal, which is whether or not it was willful. So if the Court will give me that indulgence, I'll address that. Is this a prejudgment interest issue or no? Willful. Whether or not there should have been three years as opposed to two awarded. Oh, okay. Right. And that is really the sole issue with regard to the cross-appeal. So I assume for brevity purposes I just address that and then allow counsel to do her rebuttal. In this case, Your Honor, there is some argument that this case should be remanded to the trial court because of issues of fact. I addressed that in the brief, but I must state that I do not see any issues of fact that were disputed. That was as to the duties, I believe. The argument was as to the duties, the nature of the duties. And also as to whether they were salaried. But if we agree with your position that they do not meet the definition of learned professionals, then we don't have to reach those issues, do we? Yes. I agree. I agree. The issue with regard to qualifications was outlined by Judge Kavanaugh in his decision and is also outlined in the brief of the Port Authority. The sole qualifications for the helicopter pilots when they received this job was a high school education or GED, 2,000 hours flying time, 750 in the civilian helicopter pilot, a commercial helicopter pilot certificate, an FAA second-class medical certificate, airline transport pilot rating preferred but not required, and knowledge of FAA rules and regulations. Those were, in fact, the requirements. The courts, I think, have been very clear with regard to danger of working backwards from taking the individuals in this particular case and say they have more than that and, therefore, that makes them a learned professional. The Department of Labor regulations, which has been brought up by your honors, based upon the Third Circuit case of Ingram v. County of Bucks in 1998 case, which states the Department of Labor regulations of the FLSA are entitled to substantial deference. In this case, the Department of Labor, after Kitty Hawk, chose not to amend the regulations to include helicopter pilots. Yes, they did indicate that there was some conflicting case law, but they could have taken the position of changing their previous position, which is they were not learned professionals and chose not to. With regard to the decision of Judge Kavanaugh, it's a well-reasoned decision, and he based a good portion of his decision on the Martin v. Penn case, making reference to this Third Circuit case as being the only one within this district with regard to the issue of helicopter pilots. In that case, it was found by the court that the helicopter pilots were merely highly trained technicians who exercised no control, discretion, or administrative functions in performing their duties. The duties of the pilots in that case, it should be noted, are the same as the duties of the pilots in this case, which was to get work assignments from their supervisor, no supervision of the ground crew, and all decisions and judgments for any major policy change would have to go through their supervisor. Those are the same duties of these pilots in this case. So the burden of proof for the exemption I will submit to this court has not been met. It is the duty of the Port Authority to establish that these pilots fall within the learned professional exception, and the exemption has obviously not, in my opinion, been satisfied. It's not merely the fact that with regard to our claim, with regard to the mechanics and the other members of the department, there was testimony, and I want to emphasize that because it is referenced in both briefs, there was a chief pilot at one point in time. He did supervise the other pilots. He had the same training as these helicopter pilots. He was paid overtime, time and a half, by the Port Authority of Newark and New Jersey, as opposed to the rest of the remaining helicopter pilots. That was brought to the attention of Mr. Chase when he was hired in 1977. So with regard to the issue of whether or not the actions are willful, Judge Kavanaugh determined that not classifying these individuals as being qualified for time and a half and classifying them instead as learned professionals under the exemption of the FLSA. He found not to be willful based upon the fact that Ms. Basile, and I'll stipulate this, did testify that she based any decision she made with regard to the legal advice given to her by the legal department of the Port Authority. The question that was raised in the opinion, the court below indicated that he believed it to be a leap, I believe he referred to it as a leap of logic, to say just because other people in the department are paid time and a half, we should have been paid time and a half. The reference to those individuals are the other individuals, not the chief pilot. So I wanted to emphasize that for the court. That was not addressed and does not appear to be addressed in the decision below. The chief pilot was getting, the only evidence I see, is the chief pilot was getting time and a half when one of the plaintiffs, I believe, was hired in 1982. Yes, and at the time that one of them was hired, that would have been Thompson Chase, actually in 1977 he was advised that he was paid time and a half and that they were attempting to review that. And I apologize to the court, I think that is referenced, I think it's page 200 of the appendix, it's part of the testimony of Thompson Chase in his deposition. Going on with regard to the test done by Judge Kavanaugh, I think, and I'll state on the record, he went through each and every step of the test and indicated rightfully that each step had to be met in order for the person or persons to be considered learned professionals. And I don't think I need to further address basically that. Finally, with regard to the experience, again, I've outlined for the court what the experience that was needed when they obtained the position. The fact that they may or may not have obtained college degrees or other things in addition to that was not the criteria by which they were hired as helicopter pilots and should not based upon the admonition basically of the courts to be utilized to work backwards in order to, and that was in the Ragnoni case, to work backwards in order to pigeonhole somebody into the learned professional exemption. Was the judge correct when he said that although they don't have a doctor's or a lawyer's education, that he must find that the education they have, the licenses and training are the functional equivalent of an advanced degree? I think that's an accurate statement. Your Honor, actually, as I stand here basically before you, I cannot agree. I have two clients who looking at the law said to me, of course we're professional individuals, and I had to explain what professional basically exemption requires. No one wants to be referred to as unprofessional, so they assumed obviously that to be the case. It's a legal thing. It's mind boggling. Correct, Your Honor. And in that regard, I explained to them the training they received is more equivalent to on-the-job type training. It's the flight hours. It's not formal education like a doctor or a lawyer. It is not with an advanced degree because they obviously, and as evidenced here, went into flight school with a high school or GED equivalent. Somewhere in the rubble here, I think, there's a case named Kyle where they do actually say advanced degree. The court does say advanced degree. And I can't point to it, and I apologize to the court because I can't point to that at this point. The final issue I think which hasn't been addressed and the only thing I'll say very quickly is free judgment interest. And I think the court laid out why he granted that. And the fact is that based upon case law and in particular, pointing to the case, I'll give you the case, Brock. Yes, in Brock, Third Circuit, 8-12-5F2. It's discretionary. It is discretionary. However, they said back pay awards should be resumed to carry free judgment interest in the Brock case. So I would just reference that for the point of the substantiation. I believe it was appropriate for the award. I think that the Port Authority's brief only deals with, only complains of free judgment interest during the two years between summary judgment on liability and the final judgment. I understand that. And I don't know of any case that would say because the court delayed in ruling on something before. The Port Authority did an interlocutory appeal and did all kinds of settlement conferences. And looking at that, I determined actually from that very roughly that of the $19,000 awarded to one, that would make a difference of about $5,000 to $6,000, with the other of $14,000. Don't give up that easily. Don't give up that easily. Pardon me? You're saying just take $6,000 away and it's okay. Oh, I don't talk about it easily. I try to work out exactly what their claim would cost my clients. And it's not minor. It is something that I think was appropriate under the circumstances basically for the judge to award it. Now, the willful nature, did you want to address that? The only additional issue that wasn't addressed by the court, and I will put on the record here that Judge Kavanaugh did a thorough review of all the record below. It was clear from his decision that he had read all the evidence. The only thing he did not reference is that issue with regard to the chief pilot. If they knew and were paying someone who was a pilot and advised these gentlemen from the 1990s on that this issue was going to be reviewed, they are not attorneys. They are not in the legal profession. They did not pursue it, but also assumed that it was something that would be addressed and had not been addressed. That was the reason we had made an argument that it was willful on their part. However, and I've stipulated on the record, Ms. Basile did testify that their decision was based solely upon the legal advice of the Court Authority Legal Department. And that they had briefed. I mean, his opinion says that they researched it and they did not deliberately ignore judicial invalidations of the plan, similar. I mean, it seems like there was a basis. Based upon basically legal advice provided. I have one question. I asked your adversary about those three pronouncements by Department of Labor. Should we be deferring to them? I think deference has to be given to the Department of Labor since they have been reviewing this issue, have chosen not to amend the regulations, I think is important because they did not believe it to be a clear-cut matter to now classify these helicopter pilots as learned professionals. You cited a case for that proposition when you first stood up, and I didn't get it and looked in the brief. What case were you relying on? Ingram v. County of Bucks is a 1998 case, Third Circuit, and just a general premise. It's really not related necessarily to helicopter pilots, but just Department of Labor regulations. Okay. Thank you. Thank you. Just to bring the Court's attention to something that I mentioned previously regarding Mr. Thompson. He did indicate that he received additional training every six months, and that appears in Appendix 198. On the issue of willfulness, Your Honors, counsel indicated that there was a chief pilot who was classified such that he was entitled to receive overtime at some point in time prior to or near the time that her clients were actually hired by the Port Authority. I think that if you read the record, you will see that the job that he had does not entirely match up to the job that these gentlemen currently hold while they are now retired, or the job that they held up until the point of their retirement. He was a field supervisor who had additional job responsibilities, and therefore I don't think that an inference can be drawn regarding the Port Authority's willfulness based upon that, unless there are any more questions from the panel. Thank you. Thank you. Thank you, counsel. The case is well argued. We'll take it under advisement.